UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| REGINA GALE JACKSON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 05-1705 (RWR) |
| LIBRARY OF CONGRESS, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

This matter is before the Court on defendant's motion to dismiss.¹ For the reasons set forth below, the motion will be granted.

I.   BACKGROUND

Plaintiff began working as a janitor at the Library of Congress ("LOC") on May 26, 1975. Complaint ("Compl.") at 2, 4. Her duties required her to handle heavy objects, for example, by pulling or lifting trash containers. *See id.* at 2, 3-4, 7.

Plaintiff contacted a Counselor ("EEO Counselor") with the LOC's Equal Employment Opportunity Complaints Office ("EEOCO") in January 1983 regarding a complaint of discrimination based on race, color and sexual harassment. Compl. at 2. On February 9, 1983, the EEO Counselor notified plaintiff of her option to file a formal written complaint of

---

¹ Under 42 U.S.C. § 2000e-16(c), "the head of the department, agency, or unit, as appropriate" is the proper defendant. Plaintiff is proceeding *pro se*, and therefore enjoys greater leeway. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Her failure to name the Librarian of Congress as the defendant is not fatal.

discrimination. Plaintiff[']s Objection to Motion for Dismissal ("Pl.'s Opp.") at 18 (Memorandum from C.C. Zirps, EEO Counselor). Plaintiff did so, and on December 19, 1983, her "discrimination complaint was rejected, then on Dece. [sic] 28, 1983 [her] appeal was put in." Compl. at 2; *see* Pl.'s Opp. at 19 (Memorandum from H.R.L. Cook, Employee Representative).

Evidently the filing of a discrimination complaint triggered an unfavorable response from plaintiff's supervisor and co-workers. *See* Compl. at 4. Her supervisor threatened to "get her fired" and purposely hindered plaintiff's efforts to obtain benefits after plaintiff suffered an on-the-job injury on February 25, 1983. *See id.* at 2, 4. Her condition, diagnosed as costochondritis, required her absence from work. *Id.* at 2. She returned to limited duty work, and on July 13, 1983 she sustained a second injury. *Id.* After having undergone a physical examination in April 1984, plaintiff was deemed fit for limited duty (lifting no more than 20 pounds) for an indefinite period of time as of May 10, 1984. Notice of Filing Exhibits to Complaint ("Pl.'s Ex."), Ex. 5 (Notice of Proposed Adverse Action), Attach. B. In an effort to find a suitable work assignment, the LOC had plaintiff take a clerical test on October 25, 1984. *Id.*, Ex. 5. She failed that test, and did not report for a second test. *Id.* On November 28, 1984, the LOC determined that it did not have a position for plaintiff which would meet her physical limitations and skills. *Id.* Plaintiff took a leave of absence from November 28, 1984 through May 27, 1985.[2] Pl.'s Opp. at 21-22.

The LOC proposed plaintiff's removal on March 6, 1985 for the following reasons:

---

[2] The record does not indicate whether the leave of absence was related directly to her on-the-job injuries.


> in light of the fact that: (1) you have been determined unfit for duty in your present position due to medical reasons; (2) the Library has been unable to identify suitable placement for you due to your reported medical limitations; and (3) you have consequently remained in leave without pay status for a period in excess of one year, your removal from your position is proposed.

Pl.'s Opp. at 23 (Notice of Proposed Adverse Action). Plaintiff was terminated on June 24, 1985. *See* Compl. at 5.

Plaintiff applied for disability retirement benefits on June 14, 1985. Compl. at 5. On September 3, 1985, the Office of Personnel Management's Disability and Special Entitlements Division requested "an updated, detailed medical examination with special emphasis on Orthopedic and Psychiatric evaluation, including response to treatment, current Diagnosis, and Prognosis." Pl.'s Ex. 8. Evidently the application was denied for reasons not indicated in the record. Plaintiff again applied for disability retirement benefits in January 1997. Compl. at 5. According to the complaint, the application was approved, but plaintiff received no benefits. *Id.*

In 2003, plaintiff "started to look for reasons why all [her] benefits were being blocked." Compl. at 7. When she searched through boxes of her papers, she "found out that [she] had been fired at that time in 1985." *Id.* She claimed that she "can't remember receiving [] discharge papers." *Id.*

Plaintiff brought a second claim of discrimination to an EEO Counselor on April 1, 2005. Pl.'s Ex. 10 (Allegation of Discrimination). She alleged that the LOC discriminated against her on the basis of a physical disability which rendered her unable to perform duties as a janitor. *See id.* On April 12, 2005, the EEO Counselor notified plaintiff of her option to file a formal complaint of discrimination, and plaintiff did so on April 29, 2005. Compl. at 9; Plaintiff['s]

Motion to Settle, Ex. (April 21, 2005 letter from T.I.S. Brown, Acting EEO Counselor, EEOCO). The LOC did not accept her EEO complaint, however. *See* Compl., Attach. (May 17, 2005 Final Agency Decision). Plaintiff unsuccessfully appealed this decision. *See id.* The LOC determined that plaintiff failed to contact an EEO Counselor timely, that she did not qualify for an extension of time for making contact with an EEO Counselor, and with, respect to her termination, that she failed to file her discrimination complaint timely, that is, within 20 work days of her termination. *Id.*

In this action, plaintiff challenges the LOC's Final Agency Decision. She demands damages of $8 million, among other things, for "[t]he torment, humiliation, harassment and shame" she has suffered. Compl. at 10, 11.

## II.  DISCUSSION

Defendant moves to dismiss the complaint on the ground that plaintiff fails to state a claim upon which relief can be granted. Specifically, defendant argues that plaintiff failed to exhaust her administrative remedies, and, for this reason, the complaint should be dismissed with prejudice. A motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure does not test a plaintiff's likelihood of success on the merits. Rather, it tests whether a plaintiff properly has stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The factual allegations of the complaint are presumed to be true and liberally are construed in plaintiff's favor. *See, e.g., United States v. Phillip Morris, Inc.,* 116 F. Supp. 2d 131, 135 (D.D.C. 2001). The court, however, is not obligated to draw any inference that is not supported by the facts presented. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

*A. Procedures Regarding Acceptance of Discrimination Complaints*

"All personnel actions affecting employees . . . [of] the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). The Librarian of Congress is authorized to enforce these non-discrimination provisions with respect to LOC employees. 42 U.S.C. § 2000e-16(b). In addition, "[t]he remedies and procedures set forth in [42 U.S.C. § 2000e-16] shall be available to any employee of an instrumentality of the Congress who alleges a violation of the rights and protections under [the Americans with Disabilities Act]." 42 U.S.C. § 12209(5).

An employee of the LOC who believes that she has been discriminated against "shall notify and consult with a Counselor not later than 20 workdays after the date of the alleged discriminatory matter." Defendant's Memorandum in Support of Motion to Dismiss ("Def.'s Mot."), Ex. A, Library of Congress Regulation 2010-3.1 ("LCR 2010-3.1"), Sec. 4A. Thus begins an informal and confidential counseling process. *Id.* The time limit for contacting a Counselor "may be extended upon written request to, and approval of, the Assistant Chief [of the EEOCO]. In such a request, the complainant shall cite justification for the delay." *Id.*, Sec. 4B. If the Counselor cannot resolve the matter to the parties' satisfaction, he "shall notify the complainant, in writing, of [her] right to file a complaint at any time after receipt of the said notice up to 10 workdays thereafter." *Id.*, Sec. 4C.

A complainant shall submit her complaint in writing to the Assistant Chief of the EEOCO. LCR 2010.3.1, Sec. 5D-5E. The Assistant Chief "shall extend time limits . . . for filing a complaint upon [his] prior determination that the complainant was prevented by circumstances beyond [her] control from submitting the complaint on time." *Id.*, Sec. 5F. A complaint that is

not filed on time is not accepted, and notice of such non-acceptance is made in writing to the complainant. *Id.*, Sec. 6E, 6G. The complainant may appeal the Assistant Chief's decision not to accept a complaint by filing an appeal to the Chief of the EEOCO not later than five workdays after receiving the Assistant Chief's decision. *Id.*, Sec. 6H. "The Chief shall make a final agency decision on acceptance of the complaint for processing and shall submit [his] decision, in writing, to the complainant . . . not later than five workdays after receipt of the appeal." *Id.*

If a person fails to comply with such time limits, and fails to establish that tolling the limits is warranted, a subsequent civil action is subject to dismissal. *See Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003) (dismissing discrimination claim for failure to exhaust administrative remedies because plaintiff did not contact EEO Counselor timely); *Williams v. Chertoff*, No. 05-211, 2005 WL 3200794, *2 (D.D.C. Nov. 1, 2005) (dismissing race and age discrimination claims for plaintiff's failure to comply with EEOC time limits).

### B. Plaintiff Did Not Contact a Counselor Timely

Plaintiff connects her on-the-job injury sustained in 1983 to her removal effected in 1985. The two events are connected, but not in the direct way plaintiff suggests.

Plaintiff's April 1, 2005 formal discrimination complaint alleged discrimination based on physical disability, and listed four dates on which alleged acts of discrimination took place, the earliest of which is August 3, 1983.[3] Pl.'s Ex. 11 (Complaint of Discrimination) at 1. According to the complaint, on August 3, 1983, plaintiff's doctor recommended that plaintiff "be transferred

---

[3] The other dates are March 6, 1985, July 2, 1985, and October 12, 1993. Pl.'s Ex. 11 (Complaint of Discrimination) at 1. The notice of proposed removal is dated March 6, 1985. *Id.*, Ex. 5 (Notice of Proposed Adverse Action. The significance of the other two dates is not clear from the record.

to a job that did not involve pulling and lifting." Pl.'s Ex. 11 at 6.  Plaintiff asserted that, rather than transfer her to a suitable position, the LOC fired her.  Compl. at 2.  Her removal did not come about, however, until June 24, 1985.  *Id.* at 5.

Nothing in the complaint indicates that plaintiff contacted a Counselor within 20 workdays after her doctor's August 3, 1983 recommendation.[4]  The formal discrimination complaint she filed in January 1983 alleged discrimination based on race, color, and sexual harassment pertaining to events which necessarily occurred at some point before January 1983 and which do not appear related in any way to a physical injury or resulting disability. The fact that plaintiff may have contacted a Counselor timely with respect to her January 1983 discrimination complaint is not relevant.

Similarly, the complaint fails to allege timely contact with a Counselor with respect to plaintiff's June 25, 1985 removal.  Rather, plaintiff waited nearly 20 years to bring a charge of discrimination that the LOC terminated her because of a physical disability.

### C.  Equitable Tolling Is Not Warranted

Compliance with deadlines for filing discrimination complaints is not a jurisdictional prerequisite to a civil action in district court.  *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) ("The administrative time limits created by the EEOC erect no jurisdictional bars to bringing suit."); *Washington v. Washington Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1988), *cert. denied*, 527 U.S. 1038 (1999).  Equitable principles  apply in employment

---

[4]     Plaintiff states that she received "compensation benefits" from December 1987 through March 1993.  Compl. at 6.  The type and source of these benefits is unclear.  She also refers to proceedings before a "labor board."  *See id.* at 7.  These proceedings may be related to worker's compensation benefits.  Plaintiff does not clarify whether or how these benefits and proceedings are related to her discrimination claims against the LOC.

discrimination suits against the government, and may excuse a plaintiff's failure to pursue administrative remedies timely. *See Chung v. Dep't of Justice*, 333 F.3d 273, 276 (D.C. Cir. 2003); *Jarrell v. United States Postal Serv.*, 753 F.2d 1088, 1092 (D.C. Cir. 1985) (noting that equitable principles may excuse a plaintiff's failure to pursue administrative remedy within set time limit "if it is the result of justifiable reliance on the advice of another government officer"); *Johnson v. Billington*, 404 F.Supp.2d 157, 162 (D.D.C. 2005). "The court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Secretary of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988).

Plaintiff argues that her prolonged use of "multiple prescribed medication," Compl. at 6, including Percocet, Darvocet, Anaprox and Motrin, "made [her] incoherent," and "force[d] [her] into a situation where [she] could not clearly defend [her]self." Pl.'s Ex. 11 at 2. She could not remember receiving notice of her removal, suggesting that "[t]he medication is the only thing that could have hindered [her] mind in thinking." Compl. at 7. She argues, then, that equitable tolling should apply "for medical reason's [sic] because of prescription drugs . . . for the job injury that [plaintiff] sustain[ed] while working at the Library of Congress." Pl.'s Opp. at 14.

Plaintiff's use of prescription medication does not amount to an extraordinary circumstance to justify a delay of nearly 20 years. Nothing in plaintiff's submissions amounts to an allegation of affirmative misconduct on LOC's part. She does not allege that LOC tricked her, misled her, or otherwise induced her to miss the deadline. Nor does plaintiff allege that she diligently pursued her claims in the intervening years. She offers no reasonable argument, then, to excuse her failure to contact an EEO Counselor within the requisite time limit.

III.  CONCLUSION

Plaintiff's complaint did not state a claim upon which relief can be granted.  Plaintiff failed to contact an EEO Counselor timely, and thus failed to exhaust her administrative remedies prior to filing this civil action.  Accordingly, defendant's motion to dismiss will be granted.  An Order consistent with this Memorandum Opinion will be issued separately on this same date.

Signed this 20th day of June, 2006.

                                                        /s/
                                  RICHARD W. ROBERTS
                                  United States District Judge